Subsection 6.02.    Books and Records.

Record title to each Mortgage and the related Mortgage Note as of the related Closing Date shall be in the name of the related Seller, the Purchaser, the Custodian or one or more designees of the Purchaser, as the Purchaser shall designate. Notwithstanding the foregoing, beneficial ownership of each Mortgage and the related Mortgage Note shall be vested solely in the Purchaser or the appropriate designee of the Purchaser, as the case may be. All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Sellers after the related Cut-off Date on or in connection with a Mortgage Loan as provided in Section 4 shall be vested in the Purchaser or one or more designees of the Purchaser; provided, however, that all such funds received on or in connection with a Mortgage Loan as provided in Section 4 shall be received and held by the Sellers in trust for the benefit of the Purchaser or the assignee of the Purchaser, as the case may be, as the owner of the Mortgage Loans pursuant to the terms of this Agreement.

It is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by the Sellers and not a pledge of the Mortgage Loans by the Sellers to the Purchaser to secure a debt or other obligation of the Sellers. Consequently, the sale of each Mortgage Loan shall be reflected as a sale on the Sellers' business records, tax returns and financial statements. In the event, for any reason, any transaction contemplated herein is construed by any court or regulatory authority as a borrowing rather than as a sale, the Sellers and the Purchaser intend that the Purchaser or its assignee, as the case may be, shall have a perfected first priority security interest in the Mortgage Loans, the servicing rights appurtenant to the Mortgage Loans, the Custodial Account and the proceeds of any and all of the foregoing (collectively, the "Collateral"), free and clear of adverse claims. In such case, the Sellers shall be deemed to have hereby granted to the Purchaser or its assignee, as the case may be, a first priority security interest in and lien upon the Collateral, free and clear of adverse claims. In such event, the related Commitment Letter and this Agreement shall constitute a security agreement, the Custodian shall be deemed to be an independent custodian for purposes of perfection of the security interest granted to the Purchaser or its assignee, as the case may be, and the Purchaser or its assignee, as the case may be, shall have all of the rights of a secured party under applicable law.

Subsection 6.03.    Delivery of Mortgage Loan Documents.

The Sellers shall from time to time in connection with each Closing Date, at least five (5) Business Days prior to such Closing Date, deliver and release to the Custodian those Mortgage Loan Documents as required by this Agreement with respect to each Mortgage Loan to be purchased and sold on the related Closing Date and set forth on the related Mortgage Loan Schedule delivered with such Mortgage Loan Documents.

The Custodian shall certify its receipt of all such Mortgage Loan Documents required to be delivered pursuant to the Custodial Agreement for the related Closing Date, as evidenced by the Trust Receipt and Initial Certification of the Custodian in the form annexed to the Custodial Agreement. The fees and expenses of the Custodian shall be paid by the Purchaser and the Sellers as set forth in the related Commitment Letter.

15

The Sellers shall forward to the Custodian original documents evidencing an ~~assumption, modification, consolidation or extension of any Mortgage Loan entered into in~~ accordance with this Agreement within two weeks of their execution, provided, however, that the Sellers shall provide the Custodian with a certified true copy of any such document submitted for recordation within two weeks of its execution, and shall provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original within ninety days of its submission for recordation.

SECTION 7.    Representations, Warranties and Covenants of the Seller: Remedies for Breach.

Subsection 7.01.    Representations and Warranties Respecting the Seller.

Each Seller shall make all representations, warranties and covenants set forth in the DB Guide, section titled "Seller Representations and Warranties" as of the Initial Closing Date and each subsequent Closing Date or as of such date specifically provided herein or in the applicable Assignment and Conveyance. In addition, each Seller hereby represents and warrants that, as of the Initial Closing Date and each subsequent Closing Date or as of such date specifically provided herein or in the applicable Assignment and Conveyance, (i) each Seller is a HUD approved mortgagee pursuant to Section 203 of the National Housing Act, and (ii) no event has occurred, including but not limited to a change in insurance coverage, which would make such Seller unable to comply with HUD eligibility requirements or which would require notification to HUD.

Subsection 7.02.    Representations and Warranties Regarding Individual Mortgage Loans.

Each Seller shall make all representations and warranties set forth in the DB Guide, section titled "Representations and Warranties Regarding Loans" (other than those representations and warranties under the headings "Underwriting", "Casualty Insurance" and "Compliance by Others") as to each Mortgage Loan, as of the related Closing Date for such Mortgage Loan. In addition, each Seller hereby makes the following representations and warranties as to each Mortgage Loan, as of the related Closing Date for such Mortgage Loan:

(i)    Each Mortgage Loan has been prudently originated and underwritten by a Seller in compliance with the anti-predatory lending eligibility for purchase requirements of the FNMA Selling Guide;

(ii)    Each Seller and any predecessor servicer has fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (e.g., favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis; and the Sellers will fully furnish, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (e.g., favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Credit Information Company (three of the credit repositories), on a monthly basis;

16

(iii)    The methodology used in underwriting the extension of credit for each Mortgage Loan employs objective mathematical principles which relate the Mortgagor's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension. Such underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan;

(iv)    Each Seller will transmit full-file credit reporting data for each Mortgage Loan pursuant to Fannie Mae Guide Announcement 95-19 and for each Mortgage Loan, Company agrees it shall report one of the following statuses each month as follows: new origination, current, delinquent (30-, 60-, 90-days, etc.), foreclosed, or charged-off;

(v)    All points, fees and charges, including finance charges (whether or not financed, assessed, collected or to be collected), in connection with the origination and servicing of each Mortgage Loan were disclosed in writing to the related Mortgagor in accordance with applicable state and federal law and regulation. Except in the case of a Mortgage Loan in an original principal amount of less than $60,000 which would have resulted in an unprofitable origination, no related Mortgagor was charged "points and fees" (whether or not financed) in an amount greater than 5% of the principal amount of such loan, such 5% limitation is calculated in accordance with FNMA's anti-predatory lending requirements as set forth in the FNMA Selling Guide;

(vi)    No Balloon Loan has an original stated maturity of less than seven (7) years;

(vii)    Each Mortgage Loan identified on the Mortgage Loan Schedule as subject to a Primary Insurance Policy will be subject to a Primary Insurance Policy, issued by a Qualified Insurer, which insures that portion of the Mortgage Loan in excess of the portion of the Appraised Value of the Mortgaged Property required by FNMA and FHLMC. All provisions of such Primary Insurance Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. Any Mortgage subject to any such Primary Insurance Policy obligates the Mortgagor thereunder to maintain such insurance and to pay all premiums and charges in connection therewith;

(viii)    Each Mortgage Loan was underwritten in accordance with the Underwriting Guidelines of the applicable Seller in effect at the time the Mortgage Loan was originated; and

(ix)    All buildings upon the Mortgaged Property are insured by an insurer acceptable to FNMA and FHLMC against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located, pursuant to insurance policies conforming to the requirements of the Servicing Addendum. All such insurance policies contain a standard mortgagee clause naming the Seller, its successors and assigns as mortgagee and all premiums thereon have been paid. If the Mortgaged Property is in an area identified on a Flood Hazard Map or Flood Insurance Rate Map issued by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has

17

been made available) a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect which policy conforms to the requirements of FNMA and FHLMC and in an amount representing coverage not less than the greater of (i) the outstanding principal balance of the Mortgage Loan (plus, if the Mortgage Loan is an Option ARM Mortgage Loan which provides for Negative Amortization, the maximum amount of Negative Amortization in accordance with the Mortgage), (ii) the amount necessary to fully compensate for any damage or loss to the improvements which are a part of such property on a replacement cost basis, or (iii) the maximum amount of insurance which is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor.

Subsection 7.03.    Remedies for Breach of Representations and Warranties.

It is understood and agreed that the representations and warranties set forth in Subsections 7.01 and 7.02 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or lack of examination of any Mortgage File. Upon discovery by a Seller or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser (or which materially and adversely affects the interests of the Purchaser in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the other.

In the event of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans, the Sellers shall cure such breach or repurchase such Mortgage Loan in accordance with the DB Guide, section entitled "Repurchase". The Sellers shall, at the request of the Purchaser and assuming that the Sellers have a Qualified Substitute Mortgage Loan, rather than repurchase the Mortgage Loan as provided above, remove such Mortgage Loan and substitute in its place a Qualified Substitute Mortgage Loan or Loans; provided that such substitution shall be effected not later than 120 days after notice to the Sellers of such breach. If the Seller have no Qualified Substitute Mortgage Loan, the Sellers shall repurchase the deficient Mortgage Loan.

If pursuant to the foregoing provisions the Sellers repurchases a Mortgage Loan that is a MERS Mortgage Loan, the Sellers shall either (i) cause MERS to execute and deliver an assignment of the Mortgage in recordable form to transfer the Mortgage from MERS to a Seller and shall cause such Mortgage to be removed from registration on the MERS System in accordance with MERS' rules and regulations or (ii) cause MERS to designate on the MERS System a Seller as the beneficial holder of such Mortgage Loan.

At the time of repurchase of any deficient Mortgage Loan, the Purchaser and the Sellers shall arrange for the reassignment of the repurchased Mortgage Loan to the applicable

18

Seller and the delivery to such Seller of any documents held by the Custodian relating to the repurchased Mortgage Loan. In the event the Repurchase Price is deposited in the Custodial Account, the Interim Servicer or applicable Seller shall, simultaneously with such deposit, give written notice to the Purchaser that such deposit has taken place. Upon such repurchase the related Mortgage Loan Schedule shall be amended to reflect the withdrawal of the repurchased Mortgage Loan from this Agreement.

As to any Deleted Mortgage Loan for which a Seller substitutes a Qualified Substitute Mortgage Loan or Loans, such Seller shall effect such substitution by delivering to the Purchaser for such Qualified Substitute Mortgage Loan or Loans the Mortgage Note, the Mortgage, the Assignment of Mortgage and such other documents and agreements as are required by this Agreement, with the Mortgage Note endorsed as required therein. Such Seller shall deposit in the Custodial Account the Monthly Payment less the Servicing Fee due on such Qualified Substitute Mortgage Loan or Loans in the month following the date of such substitution. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the month of substitution will be retained by such Seller. For the month of substitution, distributions to the Purchaser will include the Monthly Payment due on such Deleted Mortgage Loan in the month of substitution, and such Seller shall thereafter be entitled to retain all amounts subsequently received by such Seller in respect of such Deleted Mortgage Loan. Such Seller shall give written notice to the Purchaser that such substitution has taken place and shall amend the Mortgage Loan Schedule to reflect the removal of such Deleted Mortgage Loan from the terms of this Agreement and the substitution of the Qualified Substitute Mortgage Loan. Upon such substitution, such Qualified Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement in all respects, and the Sellers shall be deemed to have made with respect to such Qualified Substitute Mortgage Loan or Loans, as of the date of substitution, the covenants, representations and warranties set forth in Subsections 7.01 and 7.02.

For any month in which a Seller substitutes one or more Qualified Substitute Mortgage Loans for one or more Deleted Mortgage Loans, such Seller will determine the amount (if any) by which the aggregate principal balance of all such Qualified Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all such Deleted Mortgage Loans (after application of scheduled principal payments due in the month of substitution). An amount equal to the sum of (x) the product of (i) the amount of such shortfall and (ii) the purchase price percentage used to calculate the Purchase Price, as stated in the related Commitment Letter and (y) accrued interest on the amount of such shortfall to the last day of the month such substitution occurs, shall be distributed by such Seller in the month of substitution pursuant to the Servicing Addendum. Accordingly, on the date of such substitution, such Seller, as applicable, will deposit from its own funds into the Custodial Account an amount equal to such amount.

With respect to any Mortgage Loan originated on or after November 7, 2004 which is secured by a Mortgaged Property located in the State of Massachusetts that is a refinanced Mortgage Loan, (a) if the related mortgagor alleges any violation of the mortgage loan refinance requirements of the State of Massachusetts or (b) any such Mortgage Loans cannot be included in a Pass-Through Transfer as a result of any regulatory, predatory or high cost concerns, the Sellers shall repurchase such Mortgage Loan no later than five (5) business

19

days following the Purchaser's request for repurchase in an amount equal to the Repurchase Price. The Purchaser and the Sellers agree that there shall be no requirement that any violations alleged by a mortgagor as set forth in clause (a) above have any merit or demonstrate any validity prior to the Sellers obligation to repurchase such Mortgage Loan. The Sellers shall also indemnify the Purchaser pursuant to the terms of this Agreement to the extent that any of the events set forth in clauses (a) or (b) occur.

In addition to such cure, repurchase and substitution obligation, the Sellers shall indemnify the Purchaser and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of a Seller's representation and warranty contained in this Section 7. It is understood and agreed that the obligations of the Sellers set forth in this Subsection 7.03 to cure, substitute for or repurchase a defective Mortgage Loan and to indemnify the Purchaser as provided in this Subsection 7.03 constitute the sole remedies of the Purchaser respecting a breach of the foregoing representations and warranties. The indemnification obligation of the Sellers set forth herein shall survive the termination of this Agreement notwithstanding any applicable statute of limitations, which the Sellers hereby expressly waive.

Any cause of action against a Seller relating to or arising out of the breach of any representations and warranties made in Subsections 7.01 or 7.02 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by the Purchaser or notice thereof by a Seller to the Purchaser, (ii) failure by the Sellers to cure such breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon such the Sellers by the Purchaser for compliance with the relevant provisions of this Agreement.

Subsection 7.04.    Prepayment-in-Full Premium Recapture.

In the event that any Mortgage Loans not subject to a Prepayment Charge prepay-in-full within twelve (12) months of the related Closing Date, the Sellers shall remit to the Purchaser within thirty (30) Business Days following receipt of notice from the Purchaser of a prepayment-in-full, an amount equal to the product of (A)(i) the excess of the related purchase price percentage over 100%, and multiplied by (ii) a fraction, not less than zero, the numerator of which is twelve (12) less the number of full months which have elapsed since the closing date and the denominator of which is twelve (12) and (B) the Stated Principal Balance of such prepaid Mortgage Loan as of the related Cut-off Date. In the event that any Mortgage Loans subject to a Prepayment Charge prepay-in-full within twelve (12) months of the related Closing Date, the Sellers shall remit to the Purchaser within thirty (30) Business Days following receipt of notice from the Purchaser of a prepayment-in-full, an amount equal to the positive difference, if any, between (A) the product of (i)(a) the excess of the related purchase price percentage over 100%, multiplied by (b) a fraction, the numerator of which is twelve (12) less the number of full months which have elapsed since the related Cut-off Date and the denominator of which is twelve (12), and (ii) the Stated Principal Balance of such prepaid Mortgage Loan as of the related Closing Date and (B) the amount of any Prepayment Charges paid with respect to such Mortgage Loan .

20

Subsection 7.05.     Early Payment Default or Bankruptcy Filing.

Within five (5) Business Days following receipt of notice from the Purchaser, the Sellers shall repurchase at the Repurchase Price (i) all Mortgage Loans that fail to make the first, second or third scheduled monthly payment due on such Mortgage Loan or due to Purchaser within the calendar month such payment is due or (ii) any Mortgage Loan if during the three calendar months following the Closing Date (a) the related mortgagor shall voluntarily commence any proceeding or file any petition seeking liquidation, reorganization or other relief under any Federal or state bankruptcy, insolvency, receivership or similar law now or hereafter in effect or (b) an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking liquidation, reorganization or other relief in respect of the related mortgagor under any Federal or state bankruptcy, insolvency, receivership or similar law now or hereafter in effect.

SECTION 8.     Closing.  The closing for each Mortgage Loan Package shall take place on the related Closing Date. At the Purchaser's option, the closing shall be either by telephone, confirmed by letter or wire as the parties shall agree, or conducted in person, at such place as the parties shall agree.

The closing for the Mortgage Loans to be purchased on each Closing Date shall be subject to each of the following conditions:

(a)     all of the representations and warranties of the Sellers under this Agreement shall be true and correct as of the related Closing Date and no event shall have occurred which, with reasonable notice to the Sellers or the passage of time, would constitute a default under this Agreement;

(b)     the Initial Purchaser shall have received, or the Initial Purchaser's attorneys shall have received in escrow, all Closing Documents as specified in Section 9, in such forms as are agreed upon and acceptable to the Purchaser, duly executed by all signatories other than the Purchaser as required pursuant to the terms hereof;

(c)     each Seller shall have delivered and released to the Custodian all documents required pursuant to this Agreement; and

(d)     all other terms and conditions of this Agreement shall have been complied with.

Subject to the foregoing conditions, the Initial Purchaser shall pay to the Sellers on the related Closing Date the Purchase Price, plus accrued interest pursuant to Section 4, by wire transfer of immediately available funds to the account designated by the Sellers.

SECTION 9.     Closing Documents.

(a)     On or before the Initial Closing Date, each Seller shall submit to the Initial Purchaser fully executed originals of the following documents:

21

(1)   this Agreement, in four counterparts;

(2)   a Custodial Account Letter Agreement in the form attached as Exhibit 6 hereto;

(3)   an Escrow Account Letter Agreement in the form attached as Exhibit 7 hereto;

(4)   an Officer's Certificate, in the form of Exhibit 1A or 1B hereto, including all attachments thereto;

(5)   an Opinion of Counsel to each Seller, in the form of Exhibit 2 hereto; and

(6)   each Seller's Underwriting Guidelines for each Seller's origination programs.

(b)   The Closing Documents for the Mortgage Loans to be purchased on each Closing Date shall consist of fully executed originals of the following documents:

(1)   the related Commitment Letter;

(2)   the related Mortgage Loan Schedule to be attached to the related Assignment and Conveyance;

(3)   a Custodian's trust receipt and initial certification, as required under the Custodial Agreement, in a form acceptable to the Initial Purchaser;

(4)   an Officer's Certificate, in the form of Exhibit 1A or 1B hereto, including all attachments thereto;

(5)   if requested by the Initial Purchaser, an Opinion of Counsel to each Seller, in the form of Exhibit 2 hereto;

(6)   a Security Release Certification, in the form of Exhibit 3 hereto executed by any Person, as requested by the Initial Purchaser, if any of the Mortgage Loans has at any time been subject to any security interest, pledge or hypothecation for the benefit of such Person;

(7)   a certificate or other evidence of merger or change of name, signed or stamped by the applicable regulatory authority, if any of the Mortgage Loans were acquired by a Seller by merger or acquired or originated by a Seller while conducting business under a name other than its present name, if applicable;

(8)   an Assignment and Conveyance in the form of Exhibit 4 hereto; and

(9)   any modifications, amendments or supplements to the Underwriting Guidelines following the Initial Closing Date.

22

(c)     In addition, to the extent that a Seller's Underwriting Guidelines are modified, ~~amended or supplemented at any time following the Initial Closing Date, the~~ respective Seller shall notify the Purchaser of such change and provide the Purchaser a copy in both electronic and hard copy of such modification, amendment or supplement no later than five (5) Business Days following the effective date of such modification, amendment or supplement.

SECTION 10.  Costs.   The Purchaser shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys. All other costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, including without limitation recording fees, fees for title policy endorsements and continuations, fees for recording Assignments of Mortgage and the Sellers' attorney's fees, shall be paid by the Sellers. The Sellers shall also pay certain expenses of the Custodian, including but not limited to, the Custodian's preparation of trust receipts and certifications.

SECTION 11.  Interim Servicer's Servicing Obligations.  The Interim Servicer, as independent contract servicer, shall service and administer the Mortgage Loans the Sellers sold to the Purchaser on the related Closing Date during the Interim Servicing Period, directly or through one or more Sub-Servicers, in accordance with the terms and provisions set forth in the Servicing Addendum attached as Exhibit 8, which Servicing Addendum is incorporated herein by reference.

SECTION 12.  Removal of Mortgage Loans from Inclusion under this Agreement Upon a Whole Loan Transfer or a Pass-Through Transfer on One or More Reconstitution Dates.  The Sellers and the Purchaser agree that with respect to some or all of the Mortgage Loans, the Purchaser may effect either:

(1)     one or more Whole Loan Transfers; and/or

(2)     one or more Pass-Through Transfers.

With respect to each Whole Loan Transfer or Pass-Through Transfer, as the case may be, entered into by the Purchaser, the Sellers agree:

(1)     to cooperate fully with the Purchaser and any prospective purchaser with respect to all reasonable requests and due diligence procedures and with respect to the preparation (including, but not limited to, the endorsement, delivery, assignment, and execution) of the Mortgage Loan Documents and other related documents, and with respect to servicing requirements reasonably requested by the rating agencies and credit enhancers;

(2)     to execute all Reconstitution Agreements provided that each of the Sellers and the Purchaser is given an opportunity to review and reasonably negotiate in good faith the content of such documents not specifically referenced or provided for herein;

23

(3) with respect to any Whole Loan Transfer or Pass-Through Transfer, each ~~Seller shall make the representations and warranties regarding the Sellers~~ and the Mortgage Loans as of the date of the Whole Loan Transfer or Pass-Through Transfer, modified to the extent necessary to accurately reflect the pool statistics of the Mortgage Loans as of the date of such Whole Loan Transfer or Pass-Through Transfer and supplemented by additional representations and warranties that are not unreasonable under the circumstances as of the date of such Whole Loan Transfer or Pass-Through Transfer, to the extent that any events or circumstances, including changes in applicable law occurring subsequent to the related Closing Date(s), would render a related Mortgage Loan unmarketable to a material segment of the secondary mortgage or mortgage-backed securities market;

(4) to deliver to the Purchaser, and to any Person designated by the Purchaser, such legal documents and in-house Opinions of Counsel as are customarily delivered by originators or servicers, as the case may be, and reasonably determined by the Purchaser to be necessary in connection with Whole Loan Transfers or Pass-Through Transfers, as the case may be, such in-house Opinions of Counsel for a Pass-Through Transfer to be in the form reasonably acceptable to the Purchaser, it being understood that the cost of any opinions of outside special counsel that may be required for a Whole Loan Transfer or Pass-Through Transfer, as the case may be, shall be the responsibility of the Purchaser;

(5) in the event that the Purchaser appoints a credit risk manager in connection with a Pass-Through Transfer, to execute a credit risk management agreement and provide reports and information reasonably required by the credit risk manager;

(6) in connection with any Pass-Through Transfer, to deliver to the Purchaser within five (5) Business Days after request by the Purchaser, the information with respect to the Sellers and each other originator of the Mortgage Loans as required under Item 1110(a) and (b) of Regulation AB as determined by Purchaser in its sole discretion. If requested by the Purchaser, this will include information about the applicable credit-granting or underwriting criteria;

(7) in connection with any Pass-Through Transfer, to deliver to the Purchaser within five (5) Business Days after request by the Purchaser, static pool information as required under Item 1105(a)(1) - (3) and (c) of Regulation AB and in scope and format as determined by Purchaser in its sole discretion with respect to mortgage loans that were originated by the Sellers and each other originator of the Mortgage Loans and which are similar to the Mortgage Loans;

24

(8)    in connection with any Pass-Through Transfer, to deliver to the Purchaser ~~within five (5) Business Days after request by the Purchaser,~~ (i) information regarding any legal proceedings pending (or known to be contemplated) against a Seller (as originator and as servicer) and each other originator of the Mortgage Loans and each Sub-Servicer as required by Item 1117 of Regulation AB as determined by Purchaser in its sole discretion, (ii) information regarding affiliations with respect to each Seller and Interim Servicer and each other originator of the Mortgage Loans and each Sub-Servicer as required by Item 1119(a) of Regulation AB as determined by Purchaser in its sole discretion, and (iii) information regarding relationships and transactions with respect to each Seller and Interim Servicer and each other originator of the Mortgage Loans and each Sub-Servicer as required by Item 1119(b) and (c) of Regulation AB as determined by Purchaser in its sole discretion; and

(9)    to deliver to the Purchaser and to any Person designated by the Purchaser, such statements and audit letters of reputable, certified public accountants pertaining to information provided by the Sellers or any Sub-Servicer pursuant to clause (7) above, and pursuant to clauses (6) and (2) below to the extent constituting financial information, as shall be reasonably requested by the Purchaser.

With respect to each Whole Loan Transfer or Pass-Through Transfer, as the case may be, entered into by the Purchaser, the Interim Serivcer agrees:

(1)    to negotiate and execute one or more subservicing agreements between the Interim Servicer and any master servicer which is generally considered to be a prudent master servicer in the secondary mortgage market, designated by the Purchaser in its sole discretion after consultation with the Interim Servicer and/or one or more custodial and servicing agreements among the Purchaser, the Interim Servicer and a third party custodian/trustee which is generally considered to be a prudent custodian/trustee in the secondary mortgage market designated by the Purchaser in its sole discretion after consultation with the Interim Servicer, and containing provisions substantially equivalent to those included in the Servicing Addendum to the extent required by the Purchaser in either case for the purpose of pooling the Mortgage Loans with other Mortgage Loans for resale or securitization;

(2)    in connection with any Pass-Through Transfer, to deliver to the Purchaser within five (5) Business Days after request by the Purchaser, information with respect to the Interim Servicer as required by Item 1108(b) and (c) of Regulation AB as determined by Purchaser in its sole discretion. In the event that the Interim Servicer has delegated any servicing responsibilities with respect to the Mortgage Loans to a Sub-Servicer, the Interim Servicer

25

shall provide the information required pursuant to this clause with respect to the Sub-Servicer;

(3)    in connection with Pass-Through Transfer, to execute a Reconstitution Agreement, which Reconstitution Agreement may, at the Purchaser's direction, contain contractual provisions including, but not limited to, a 24-day certificate payment delay (54-day total payment delay), servicer advances of delinquent scheduled payments of principal and interest through liquidation (unless deemed non-recoverable) and prepayment interest shortfalls (to the extent of the monthly servicing fee payable thereto), servicing and mortgage loan representations and warranties which in form and substance conform to the representations and warranties in this Agreement and to secondary market standards for securities backed by mortgage loans similar to the Mortgage Loans and such provisions with regard to servicing responsibilities, investor reporting, segregation and deposit of principal and interest payments, custody of the Mortgage Loans, and other covenants as are required by the Purchaser and one or more nationally recognized rating agencies for mortgage pass-through transactions. If the Purchaser deems it advisable at any time to pool the Mortgage Loans with other mortgage loans for the purpose of resale or securitization, the Interim Servicer agrees to execute a Reconstitution Agreement between itself and a master servicer designated by the Purchaser at its sole discretion, and/or one or more servicing agreements among the Interim Servicer, the Purchaser and a trustee designated by the Purchaser at its sole discretion;

The Sellers and Interim Servicer shall indemnify the Purchaser and any sponsor, depositor, issuing entity and underwriter in connection with a Pass-Through Transfer for any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from any untrue statement or alleged untrue statement of any material fact contained in the information provided by the Seller or any Sub-Servicer pursuant to clauses (6), (7), and (8) of the second paragraph of this Section 12 and clause (2) of the third paragraph of this Section 12 (the "Seller Information") or the omission or the alleged omission to state in the Seller Information a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances in which they are made, not misleading.

All Mortgage Loans not sold or transferred pursuant to a Whole Loan Transfer or Pass-Through Transfer shall be subject to this Agreement and shall continue to be serviced for the remainder of the Interim Servicing Period in accordance with the terms of this Agreement and with respect thereto this Agreement shall remain in full force and effect.

SECTION 13.   The Sellers.

26

Subsection 13.01.    <u>Additional Indemnification by the Sellers.</u>

In addition to the indemnification provided in Subsection 7.03, the Sellers shall indemnify the Purchaser and hold the Purchaser harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to the failure of a Seller to perform its obligations under this Agreement including but not limited to its obligation to service and administer the Mortgage Loans in strict compliance with the terms of this Agreement or any Reconstitution Agreement entered into pursuant to Section 12. The indemnification obligation of the Sellers set forth herein shall survive the termination of this Agreement notwithstanding any applicable statute of limitations, which the Sellers hereby expressly waive.

Subsection 13.02.    <u>Merger or Consolidation of the Sellers.</u>

Each Seller shall keep in full force and effect its existence, rights and franchises as a corporation under the laws of the state of its incorporation except as permitted herein, and shall obtain and preserve its qualification to do business as a foreign entity in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Agreement or any of the Mortgage Loans, and to enable such Seller to perform its duties under this Agreement.

Any Person into which a Seller may be merged or consolidated, or any corporation resulting from any merger, conversion or consolidation to which a Seller shall be a party, or any Person succeeding to the business of a Seller, shall be the successor of such Seller hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; provided, however, that the successor or surviving Person shall be an institution whose deposits are insured by FDIC or a company whose business is the origination and servicing of mortgage loans, shall be a FNMA or FHLMC approved seller/servicer and shall satisfy any requirements of Section 16 with respect to the qualifications of a successor to such Seller.

Subsection 13.03.    <u>Limitation on Liability of the Sellers and Others.</u>

Neither a Seller nor any of the officers, employees or agents of such Seller shall be under any liability to the Purchaser for any action taken or for refraining from the taking of any action in good faith in connection with the servicing of the Mortgage Loans pursuant to this Agreement, or for errors in judgment; provided, however, that this provision shall not protect a Seller or any such person against any breach of warranties or representations made herein, or failure to perform its obligations in strict compliance with any standard of care set forth in this Agreement, or any liability which would otherwise be imposed by reason of any breach of the terms and conditions of this Agreement. A Seller and any officer, employee or agent of the Seller may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder. A Seller shall not be under any obligation to appear in, prosecute or defend any legal action which is not incidental to its obligation to sell or duty to service the Mortgage Loans in accordance with this Agreement and which in its opinion may result in its incurring any expenses or liability; provided, however, that

27

such Seller may, with the consent of the Purchaser, undertake any such action which they may ~~deem necessary or desirable in respect to this Agreement and the rights and duties of the parties~~ hereto. In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities for which the Purchaser shall be liable, and such Seller shall be entitled to reimbursement therefor from the Purchaser upon written demand except when such expenses, costs and liabilities are subject to each Seller's indemnification under Subsections 7.03 or 13.01.

Subsection 13.04.     Interim Servicer Not to Resign.

The Interim Servicer shall not assign this Agreement or resign from the obligations and duties hereby imposed on it except by mutual consent of the Interim Servicer and the Purchaser or upon the determination that its servicing duties hereunder are no longer permissible under applicable law and such incapacity cannot be cured by the Interim Servicer in which event the Interim Servicer may resign as servicer. Any such determination permitting the resignation of the Interim Servicer as servicer shall be evidenced by an Opinion of Counsel to such effect delivered to the Purchaser which Opinion of Counsel shall be in form and substance acceptable to the Purchaser and which shall be provided at the cost of the Interim Servicer. No such resignation shall become effective until a successor shall have assumed the Interim Servicer's responsibilities and obligations hereunder in the manner provided in Section 16.

Subsection 13.05.     No Transfer of Servicing.

The Interim Servicer acknowledges that the Purchaser has acted in reliance upon the Interim Servicer's independent status, the adequacy of its servicing facilities, plan, personnel, records and procedures, its integrity, reputation and financial standing and the continuance thereof. Without in any way limiting the generality of this Section, the Interim Servicer shall not either assign this Agreement or the servicing hereunder or delegate its rights or duties hereunder or any portion thereof, or sell or otherwise dispose of all or substantially all of its property or assets, without the prior written approval of the Purchaser, which consent will not be unreasonably withheld.

SECTION 14.     Default.

Subsection 14.01.     Events of Default.

In case one or more of the following Events of Default by the Sellers shall occur and be continuing, that is to say:

(i)     any failure by the Sellers to remit to the Purchaser any payment required to be made under the terms of this Agreement which continues unremedied for a period of one Business Day after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Sellers by the Purchaser; or

(ii)     failure on the part of the Sellers to duly observe or perform in any material respect any other of the covenants or agreements on the part of the Sellers set forth in this Agreement which continues unremedied for a period of thirty days (except that such number of

28

days shall be fifteen in the case of a failure to pay any premium for any insurance policy required to be maintained under this Agreement) after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Sellers by the Purchaser; or

 (iii) a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against a Seller and such decree or order shall have remained in force undischarged or unstayed for a period of sixty days; or

 (iv) a Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Seller or of or relating to all or substantially all of its property; or

 (v) a Seller shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations; or

 (vi) failure by a Seller to be in compliance with the "doing business" or licensing laws of any jurisdiction where a Mortgaged Property is located; or

 (vii) the Sellers cease to meet the qualifications of either a FNMA or FHLMC seller/servicer; or

 (viii) the Interim Servicer attempts to assign its right to servicing compensation hereunder or the Seller attempts, without the consent of the Purchaser, to sell or otherwise dispose of all or substantially all of its property or assets or to assign this Agreement or the servicing responsibilities hereunder or to delegate its duties hereunder or any portion thereof; or

 (ix) failure by a Seller to duly perform, within the required time period, its obligations under Subsections 11.27, 11.28 or 11.29 which failure continues unremedied for a period of ten (10) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Interim Servicer by any party to this Agreement or by any master servicer responsible for master servicing the Mortgage Loans pursuant to a securitization of such Mortgage Loans;

then, and in each and every such case, so long as an Event of Default shall not have been remedied, the Purchaser, by notice in writing to the Interim Servicer, may, in addition to whatever rights the Purchaser may have at law or in equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the Interim Servicer as servicer under this Agreement. On or after the receipt by the Interim Servicer of such written notice, all authority and power of the Interim Servicer to service the Mortgage Loans under this Agreement shall on the date set forth in such notice pass to and be vested in the successor appointed pursuant to Section 16.

29

If any of the Mortgage Loans are MERS Mortgage Loans, in connection with the termination or resignation (as described in Subsection 13.04) of the Interim Servicer hereunder, either (i) the successor servicer shall represent and warrant that it is a member of MERS in good standing and shall agree to comply in all material respects with the rules and procedures of MERS in connection with the servicing of the Mortgage Loans that are registered with MERS, or (ii) the Interim Servicer shall cooperate with the successor company either (x) in causing MERS to execute and deliver an assignment of Mortgage in recordable form to transfer the Mortgage from MERS to the Purchaser and to execute and deliver such other notices, documents and other instruments as may be necessary or desirable to effect a transfer of such Mortgage Loan or servicing of such Mortgage Loan on the MERS System to the successor company or (y) in causing MERS to designate on the MERS System the successor company as the servicer of such Mortgage Loan.

Subsection 14.02.    Waiver of Defaults.

The Purchaser may waive any default by a Seller in the performance of its obligations hereunder and its consequences. Upon any such waiver of a past default, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement. No such waiver shall extend to any subsequent or other default or impair any right consequent thereon except to the extent expressly so waived.

SECTION 15.  Termination.  The respective obligations and responsibilities of the Interim Servicer, as servicer, shall terminate at the expiration of the Interim Servicing Period unless terminated on an earlier date at the option of the Purchaser or pursuant to Section 14. Upon written request from the Purchaser in connection with any such termination, the Interim Servicer shall prepare, execute and deliver any and all documents and other instruments, place in the Purchaser's possession all Mortgage Files, and do or accomplish all other acts or things necessary or appropriate to effect the purposes of such notice of termination, whether to complete the transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwise, at the Interim Servicer's sole expense. The Interim Servicer agrees to cooperate with the Purchaser and such successor in effecting the termination of the Interim Servicer's responsibilities and rights hereunder as servicer, including, without limitation, the transfer to such successor for administration by it of all cash amounts which shall at the time be credited by the Interim Servicer to the related Custodial Account or Escrow Account or thereafter received with respect to the Mortgage Loans. The indemnification obligation of the Interim Servicer set forth herein shall survive the termination of this Agreement notwithstanding any applicable statute of limitations, which the Interim Servicer hereby expressly waives.

SECTION 16.  Successor to the Interim Servicer.  Prior to termination of the Interim Servicer's responsibilities and duties under this Agreement pursuant to Section 12, 14 or 15, the Purchaser shall (i) succeed to and assume all of the Interim Servicer's responsibilities, rights, duties and obligations under this Agreement, or (ii) appoint a successor which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Interim Servicer as servicer under this Agreement. In connection with such appointment and assumption, the Purchaser may make such arrangements for the reasonable compensation of such

30

successor out of payments on Mortgage Loans as it and such successor shall agree. In the event that the Interim Servicer's duties, responsibilities and liabilities as servicer under this Agreement should be terminated pursuant to the aforementioned Sections, the Interim Servicer shall discharge such duties and responsibilities during the period from the date it acquires knowledge of such termination until the effective date thereof with the same degree of diligence and prudence which it is obligated to exercise under this Agreement, and shall take no action whatsoever that might impair or prejudice the rights or financial condition of the Purchaser or such successor. The termination of the Interim Servicer as servicer pursuant to the aforementioned Sections shall not become effective until a successor shall be appointed pursuant to this Section 16 and shall in no event relieve a Seller of the representations and warranties made pursuant to Subsections 7.01 and 7.02 and the remedies available to the Purchaser under Subsection 7.03 or 7.04, it being understood and agreed that the provisions of such Subsections 7.01, 7.02, 7.03 and 7.04 shall be applicable to the Sellers notwithstanding any such resignation or termination of the Interim Servicer, or the termination of this Agreement.

Any successor appointed as provided herein shall execute, acknowledge and deliver to the Interim Servicer and to the Purchaser an instrument accepting such appointment, whereupon such successor shall become fully vested with all the rights, powers, duties, responsibilities, obligations and liabilities of the Interim Servicer, with like effect as if originally named as a party to this Agreement provided, however, that such successor shall not assume, and the Interim Servicer shall indemnify such successor for, any and all liabilities arising out of the Interim Servicer's acts as servicer. Any termination of the Interim Servicer as servicer pursuant to Section 12, 14 or 15 shall not affect any claims that the Purchaser may have against the Interim Servicer arising prior to any such termination or resignation or remedies with respect to such claims.

The Interim Servicer shall timely deliver to the successor the funds in the related Custodial Account, REO Account and the related Escrow Account and the Mortgage Files and related documents and statements held by it hereunder and the Interim Servicer shall account for all funds. The Interim Servicer shall execute and deliver such instruments and do such other things all as may reasonably be required to more fully and definitely vest and confirm in the successor all such rights, powers, duties, responsibilities, obligations and liabilities of the Interim Servicer as servicer. The successor shall make arrangements as it may deem appropriate to reimburse the Interim Servicer for amounts the Interim Servicer actually expended as servicer pursuant to this Agreement which the successor is entitled to retain hereunder and which would otherwise have been recovered by the Interim Servicer pursuant to this Agreement but for the appointment of the successor servicer.

SECTION 17.  Financial Statements.  In addition to the requirements set forth in the DB Guide section titled "Financial Statements", each Seller understands that in connection with the Purchaser's marketing of the Mortgage Loans, the Purchaser shall make available to prospective purchasers each Seller's financial statements for the most recently completed three fiscal years respecting which such statements are available. Each Seller also shall make available any comparable interim statements to the extent any such statements have been prepared by such Seller (and are available upon request to members or stockholders of such Seller). Each Seller, if it has not already done so, agrees to furnish promptly to the Purchaser

[TPW: NYLEGAL:385167.4] 17988-00374  10/17/2005 06:46 PM

copies of the statements specified above.  The Interim Servicer also shall make available information on its servicing performance with respect to mortgage loans serviced for others, including delinquency ratios.

The Sellers also agrees to allow access to knowledgeable financial, accounting, origination and servicing officers of the Sellers for the purpose of answering questions asked by any prospective purchaser regarding recent developments affecting the Sellers, their loan origination or servicing practices or the financial statements of the Sellers.

SECTION 18.  Mandatory Delivery; Grant of Security Interest.  The sale and delivery of each Mortgage Loan on or before the related Closing Date is mandatory from and after the date of the execution of the related Commitment Letter, it being specifically understood and agreed that each Mortgage Loan is unique and identifiable on the date hereof and that an award of money damages would be insufficient to compensate the Initial Purchaser for the losses and damages incurred by the Initial Purchaser (including damages to prospective purchasers of the Mortgage Loans) in the event of a Seller's failure to deliver each of the related Mortgage Loans or one or more Mortgage Loans otherwise acceptable to the Initial Purchaser on or before the related Closing Date.  The Sellers hereby grant to the Initial Purchaser a lien on and a continuing security interest in each Mortgage Loan and each document and instrument evidencing each such Mortgage Loan to secure the performance by the Sellers of their obligation hereunder, and the Sellers agree that they hold such Mortgage Loans in custody for the Initial Purchaser subject to the Initial Purchaser's (i) right to reject any Mortgage Loan under the terms of this Agreement and the related Commitment Letter, and (ii) obligation to pay the related Purchase Price for the Mortgage Loans.  All rights and remedies of the Purchaser under this Agreement are distinct from, and cumulative with, any other rights or remedies under this Agreement or afforded by law or equity and all such rights and remedies may be exercised concurrently, independently or successively.

SECTION 19.  Notices.  All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

(i)     if to the Purchaser:

DB Structured Products, Inc.
60 Wall Street
New York, New York 10005
Attn: Michael Commaroto

(ii)    if to the Sellers:

Innovative Mortgage Capital, LLC
121 Innovation Drive, Suite 200
Irvine, CA 92617
Attn: John Ashton

32

With a copy to: Mortgage Loan Specialists, Inc.

    (iii)    if to the Interim Servicer:

Innovative Mortgage Capital, LLC
121 Innovation Drive, Suite 200
Irvine, CA 92617
Attn: John Ashton

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 20. Severability Clause. Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

SECTION 21. Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 22. Governing Law. The Agreement shall be construed in accordance with the laws of the State of New York without regard to any conflicts of law provisions and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.

SECTION 23. Intention of the Parties. It is the intention of the parties that the Initial Purchaser is purchasing, and the Sellers are selling, the Mortgage Loans and not a debt instrument of such Seller or another security. Accordingly, the parties hereto each intend to treat the transaction for Federal income tax purposes as a sale by the Sellers, and a purchase by the Purchaser, of the Mortgage Loans. The Initial Purchaser shall have the right to review the

33

Mortgage Loans and the related Mortgage Loan Files to determine the characteristics of the Mortgage Loans which shall affect the Federal income tax consequences of owning the Mortgage Loans and the Sellers shall cooperate with all reasonable requests made by the Initial Purchaser in the course of such review. In the event, for any reason, any transaction contemplated herein is construed by any court or regulatory authority as a borrowing rather than as a sale, the Sellers and the Purchaser intend that the Purchaser or its assignee, as the case may be, shall have a perfected first priority security interest in the Mortgage Loans, the servicing rights appurtenant to the Mortgage Loans, the Custodial Account and the proceeds of any and all of the foregoing (collectively, the "Collateral"), free and clear of adverse claims. In such case, the Sellers shall be deemed to have hereby granted to the Purchaser or its assignee, as the case may be, a first priority security interest in and lien upon the Collateral, free and clear of adverse claims. In such event, the related Commitment Letter and this Agreement shall constitute a security agreement, the Custodian shall be deemed to be an independent custodian for purposes of perfection of the security interest granted to the Purchaser or its assignee, as the case may be, and the Purchaser or its assignee, as the case may be, shall have all of the rights of a secured party under applicable law.

SECTION 24.  <u>Successors and Assigns</u>.  This Agreement shall bind and inure to the benefit of and be enforceable by the Sellers and the Purchaser and the respective successors and assigns of the Sellers and the Purchaser. The Purchaser may assign this Agreement to any Person to whom any Mortgage Loan is transferred whether pursuant to a sale or financing and to any Person to whom the servicing or master servicing of any Mortgage Loan is sold or transferred. Upon any such assignment, the Person to whom such assignment is made shall succeed to all rights and obligations of the Purchaser under this Agreement to the extent of the related Mortgage Loan or Mortgage Loans and this Agreement, to the extent of the related Mortgage Loan or Loans, shall be deemed to be a separate and distinct Agreement between the Sellers and such Purchaser, and a separate and distinct Agreement between the Sellers and each other Purchaser to the extent of the other related Mortgage Loan or Loans. In the event that this Agreement is assigned to any Person to whom the servicing or master servicing of any Mortgage Loan is sold or transferred, the rights and benefits under this agreement which inure to the Purchaser shall inure to the benefit of both the Person to whom such Mortgage Loan is transferred and the Person to whom the servicing or master servicing of the Mortgage Loan has been transferred; provided that, the right to require a Mortgage Loan to be repurchased by the Sellers pursuant to Subsection 7.03 or 7.04 shall be retained solely by the Purchaser. This Agreement shall not be assigned, pledged or hypothecated by a Seller to a third party without the consent of the Purchaser, which consent shall not be unreasonably withheld.

SECTION 25.  <u>Commitment Letter</u>.  The terms and conditions set forth in the Commitment Letter with respect to each Closing Date shall be incorporated herein. In the event of any conflict between the terms of this Agreement and the related Commitment Letter, the Commitment Letter shall control.

SECTION 26.  <u>Waivers</u>.  No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

34