SECTION 27.  Exhibits.  The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

SECTION 28.  Nonsolicitation.  Each Seller covenants and agrees that it shall not take any action to solicit the refinancing of any Mortgage Loan following the date hereof or provide information to any other entity to solicit the refinancing of any Mortgage Loan; provided that, the foregoing shall not preclude a Seller from engaging in solicitations to the general public by newspaper, radio, television or other media which are not directed toward the Mortgagors or from refinancing the Mortgage Loan of any Mortgagor who, without solicitation, contacts such Seller to request the refinancing of the related Mortgage Loan.

SECTION 29.  General Interpretive Principles.  For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)  the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)  accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)  references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)  reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)  the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)  the term "include" or "including" shall mean without limitation by reason of enumeration.

SECTION 30.  Reproduction of Documents.  This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular

course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 31.  <u>Further Agreements</u>.  The Sellers and the Purchaser each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

SECTION 32.  <u>Third Party Beneficiary</u>.   For purposes of this Agreement, including but not limited to Subsection 11.27, any Master Servicer shall be considered a third party beneficiary to this Agreement entitled to all the rights and benefits accruing to any Master Servicer herein as if it were a direct party to this Agreement.

**[SIGNATURE PAGE FOLLOWS]**

36

IN WITNESS WHEREOF, the Seller and the Purchaser have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

**INNOVATIVE MORTGAGE CAPITAL, LLC**
(Seller and Interim Servicer)

By:

Name:
Title: Sean Byerly
President

**MORTGAGE LOAN SPECIALISTS, INC.**
(Seller)

By:

Name:
Title: Sean Byerly
Vice President

**DB STRUCTURED PRODUCTS, INC.**
(Initial Purchaser)


By:

Name:
Title:


By:

Name:
Title:

EXHIBIT 1A

## FORM OF SELLER'S OFFICER'S CERTIFICATE

I, _____, hereby certify that I am the duly elected _____ of Innovative Mortgage Capital, LLC, a _____ ("Innovative"), and further certify, on behalf of the Innovative as follows:

      1.      Attached hereto as Attachment I are a true and correct copy of the Certificate of Incorporation and by-laws of the Innovative as are in full force and effect on the date hereof.

      2.      No proceedings looking toward merger, liquidation, dissolution or bankruptcy of Innovative are pending or contemplated.

      3.      Each person who, as an officer or attorney-in-fact of Innovative, signed (a) the Master Mortgage Loan Purchase and Interim Servicing Agreement (the "Purchase Agreement"), dated as of October 1, 2005 by and among Innovative Mortgage Capital, LLC, as a Seller and Interim Servicer, Mortgage Loan Specialists, Inc. as a Seller and DB Structured Products, Inc. (the "Purchaser"); (b) the Commitment Letter, dated _____ __, 200_, between the Innovative and the Purchaser (the "Commitment Letter"); and (c) any other document delivered prior hereto or on the date hereof in connection with the sale and servicing of the Mortgage Loans in accordance with the Purchase Agreement and the Commitment Letter was, at the respective times of such signing and delivery, and is as of the date hereof, duly elected or appointed, qualified and acting as such officer or attorney-in-fact, and the signatures of such persons appearing on such documents are their genuine signatures.

      4.      Attached hereto as Attachment II is a true and correct copy of the resolutions duly adopted by the board of directors of the Innovative on _____, 200_ (the "Resolutions") with respect to the authorization and approval of the sale and servicing of the Mortgage Loans; said Resolutions have not been amended, modified, annulled or revoked and are in full force and effect on the date hereof.

      5.      Attached hereto as Attachment III is a Certificate of Good Standing of the Seller dated _____, 200_. No event has occurred since _____, 200_ which has affected the good standing of the Innovative under the laws of the State of _____.

      6.      Attached hereto as Attachment IV is a copy of each license of Innovative to originate and sell the Mortgage Loans. No such licenses have been suspended or revoked by any court, administrative agency, arbitrator or governmental body and no proceedings are pending which might result in such suspension or revocation.

2-1

7.    All of the representations and warranties of Innovative contained in Subsections 7.01 and 7.02 of the Purchase Agreement were true and correct in all material respects as of the date of the Purchase Agreement and are true and correct in all material respects as of the date hereof.

8.    Innovative has performed all of its duties and has satisfied all the material conditions on its part to be performed or satisfied prior to the related Closing Date pursuant to the Purchase Agreement and the related Commitment Letter.

All capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Purchase Agreement.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed the seal of Innovative.

Dated:_____

[Seal]

                              INNOVATIVE MORTGAGE CAPITAL, LLC
                              (Seller)


                              By:_____
                              Name:_____
                              Title: Vice President


I, _____, Secretary of the Seller, hereby certify that _____ is the duly elected, qualified and acting Vice President of the Seller and that the signature appearing above is genuine.

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated:_____

[Seal]

                              INNOVATIVE MORTGAGE CAPITAL, LLC
                              (Seller)


                              By:_____
                              Name:_____
                              Title: [Assistant] Secretary

2-2

EXHIBIT 1B

## FORM OF SELLER'S OFFICER'S CERTIFICATE

I, _____, hereby certify that I am the duly elected _____ of Mortgage Loans Specialists, Inc. a _____ ("MLSI"), and further certify, on behalf of MLSI as follows:

1.    Attached hereto as Attachment I are a true and correct copy of the Certificate of Incorporation and by-laws of MLSI as are in full force and effect on the date hereof.

2.    No proceedings looking toward merger, liquidation, dissolution or bankruptcy of MLSI are pending or contemplated.

3.    Each person who, as an officer or attorney-in-fact of MLSI, signed (a) the Master Mortgage Loan Purchase and Interim Servicing Agreement (the "Purchase Agreement"), dated as of October 1, 2005 by and among Innovative Mortgage Capital, LLC, as a Seller and Interim Servicer, Mortgage Loan Specialists, Inc., as a Seller and DB Structured Products, Inc. (the "Purchaser"); (b) the Commitment Letter, dated _____ __, 200_, among the Innovative and the Purchaser (the "Commitment Letter"); and (c) any other document delivered prior hereto or on the date hereof in connection with the sale and servicing of the Mortgage Loans in accordance with the Purchase Agreement and the Commitment Letter was, at the respective times of such signing and delivery, and is as of the date hereof, duly elected or appointed, qualified and acting as such officer or attorney-in-fact, and the signatures of such persons appearing on such documents are their genuine signatures.

4.    Attached hereto as Attachment II is a true and correct copy of the resolutions duly adopted by the board of directors of MLSI on _____, 200_ (the "Resolutions") with respect to the authorization and approval of the sale and servicing of the Mortgage Loans; said Resolutions have not been amended, modified, annulled or revoked and are in full force and effect on the date hereof.

5.    Attached hereto as Attachment III is a Certificate of Good Standing of the MLSI dated _____, 200_. No event has occurred since _____, 200_ which has affected the good standing of the Seller under the laws of the State of _____.

6.    Attached hereto as Attachment IV is a copy of each license of MLSI to originate and sell the Mortgage Loans. No such licenses have been suspended or revoked by any court, administrative agency, arbitrator or governmental body and no proceedings are pending which might result in such suspension or revocation.

2-3

7.    All of the representations and warranties of MLSI contained in ~~Subsections 7.01 and 7.02 of the Purchase Agreement were true and correct in all~~ material respects as of the date of the Purchase Agreement and are true and correct in all material respects as of the date hereof.

8.    MLSI has performed all of its duties and has satisfied all the material conditions on its part to be performed or satisfied prior to the related Closing Date pursuant to the Purchase Agreement and the related Commitment Letter.

All capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Purchase Agreement.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed the seal of the Seller.

Dated:_____

[Seal]

MORTGAGE LOAN SPECIALISTS, INC.
(Seller)

By:_____
Name:_____
Title:

I, _____, Secretary of the Seller, hereby certify that _____ is the duly elected, qualified and acting Vice President of the Seller and that the signature appearing above is genuine.

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated:_____

[Seal]

MORTGAGE LOAN SPECIALISTS, INC.
(Seller)

By:_____
Name:_____
Title:

2-4

EXHIBIT 2

FORM OF OPINION OF COUNSEL TO THE SELLER

_____
(Date)

DB Structured Products, Inc.
60 Wall Street
New York, New York 10005

Re:    Master Mortgage Loan Purchase and Interim Servicing
       Agreement, dated as of October 1, 2005

Gentlemen:

I have acted as counsel to [Innovative Mortgage Capital, LLC ("Innovative")][a _____ corporation][and][Mortgage Loan Specialists, Inc. ("MLSI")], a _____ corporation (the "Sellers'), in connection with the sale of certain mortgage loans by the Seller to DB Structured Products, Inc. (the "Purchaser") pursuant to (i) a Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of October 1, 2005, by and among Innovative Mortgage Capital, LLC, as a Seller and Interim Servicer, Mortgage Loan Specialists, Inc., as a Seller and the Purchaser (the "Purchase Agreement"), and the Commitment Letter, dated _____ __, 200_, between Innovative and the Purchaser (the "Commitment Letter"). Capitalized terms not otherwise defined herein have the meanings set forth in the Purchase Agreement.

In connection with rendering this opinion letter, I, or attorneys working under my direction, have examined, among other things, originals, certified copies or copies otherwise identified to my satisfaction as being true copies of the following:

A.    The Purchase Agreement;
B.    The Commitment Letter;
C.    [Innovative's][MLSI's] Certificate of Incorporation and By-Laws, as amended to date; and
D.    Resolutions adopted by the board of directors of [Innovative][MLSI]with specific reference to actions relating to the transactions covered by this opinion (the "Resolutions").

For the purpose of rendering this opinion, I have made such documentary, factual and legal examinations as I deemed necessary under the circumstances. As to factual matters, I have relied upon statements, certificates and other assurances of public officials and of officers and other representatives of [Innovative][MLSI] , and upon such other certificates as I deemed appropriate, which factual matters have not been independently established or verified by me. I

2-1

have also assumed, among other things, the genuineness of all signatures, the legal capacity of all natural persons, the authenticity of all documents submitted to me as originals, and the conformity to original documents of all documents submitted to me as copies and the authenticity of the originals of such copied documents.

On the basis of and subject to the foregoing examination, and in reliance thereon, and subject to the assumptions, qualifications, exceptions and limitations expressed herein, I am of the opinion that:

1.      [Innovative][MLSI] has been duly incorporated and is validly existing and in good standing under the laws of the State of _____ with corporate power and authority to own its properties and conduct its business as presently conducted by it. [Innovative][MLSI] has the corporate power and authority to service the Mortgage Loans, and to execute, deliver, and perform its obligations under the Purchase Agreement and the Commitment Letter (sometimes collectively, the "Agreements").

2.      The Purchase Agreement and the Commitment Letter have been duly and validly authorized, executed and delivered by the [Innovative][MLSI].

3.      The Purchase Agreement and the Commitment Letter constitute valid, legal and binding obligations of [Innovative][MLSI], enforceable against [Innovative][MLSI] in accordance with their respective terms.

4.      No consent, approval, authorization or order of any state or federal court or government agency or body is required for the execution, delivery and performance by the Seller of the Purchase Agreement and the Commitment Letter, or the consummation of the transactions contemplated by the Purchase Agreement and the Commitment Letter, except for those consents, approvals, authorizations or orders which previously have been obtained.

5.      Neither the servicing of the Mortgage Loans by [Innovative][MLSI] as provided in the Purchase Agreement and the Commitment Letter, nor the fulfillment of the terms of or the consummation of any other transactions contemplated in the Purchase Agreement and the Commitment Letter will result in a breach of any term or provision of the certificate of incorporation or by-laws of[Innovative][MLSI], or, to the best of my knowledge, will conflict with, result in a breach or violation of, or constitute a default under, (i) the terms of any indenture or other agreement or instrument known to me to which the [Innovative][MLSI] is a party or by which it is bound, (ii) any State of _____ or federal statute or regulation applicable to [Innovative][MLSI], or (iii) any order of any State of _____ or federal court, regulatory body, administrative agency or governmental body having jurisdiction over [Innovative][MLSI], except in any such case where the default, breach or violation would not have a material adverse effect on [Innovative][MLSI] or its ability to perform its obligations under the Purchase Agreement.

2-2

6. There is no action, suit, proceeding or investigation pending or, to the best of my knowledge, threatened against [Innovative][MLSI] which, in my judgment, either in any one instance or in the aggregate, would draw into question the validity of the Purchase Agreement or which would be likely to impair materially the ability of [Innovative][MLSI] to perform under the terms of the Purchase Agreement.

7. The sale of each Mortgage Note and Mortgage as and in the manner contemplated by the Purchase Agreement is sufficient fully to transfer to the Purchaser all right, title and interest of [Innovative][MLSI] thereto as noteholder and mortgagee.

8. The Assignments of Mortgage are in recordable form and upon completion will be acceptable for recording under the laws of the State of _____. When endorsed, as provided in the Purchase Agreement, the Mortgage Notes will be duly endorsed under _____ law.

The opinions above are subject to the following additional assumptions, exceptions, qualifications and limitations:

A. I have assumed that all parties to the Agreements other than the [Innovative][MLSI] have all requisite power and authority to execute, deliver and perform their respective obligations under each of the Agreements, and that the Agreements have been duly authorized by all necessary corporate action on the part of such parties, have been executed and delivered by such parties and constitute the legal, valid and binding obligations of such parties.

B. My opinion expressed in paragraphs 3 and 7 above is subject to the qualifications that (i) the enforceability of the Agreements may be limited by the effect of laws relating to (1) bankruptcy, reorganization, insolvency, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally, including, without limitation, the effect of statutory or other laws regarding fraudulent conveyances or preferential transfers, and (2) general principles of equity upon the specific enforceability of any of the remedies, covenants or other provisions of the Agreements and upon the availability of injunctive relief or other equitable remedies and the application of principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law) as such principles relate to, limit or affect the enforcement of creditors' rights generally and the discretion of the court before which any proceeding for such enforcement may be brought; and (ii) I express no opinion herein with respect to the validity, legality, binding effect or enforceability of (a) provisions for indemnification in the Agreements to the extent such provisions may be held to be unenforceable as contrary to public policy or (b) Section 18 of the Purchase Agreement.

C. I have assumed, without independent check or certification, that there are no agreements or understandings among [Innovative][MLSI], the Purchaser and any other party which would expand, modify or otherwise affect the terms of the documents described herein or the respective rights or obligations of the parties thereunder.

2-3

I am admitted to practice in the State of _____, and I render no opinion herein as to matters involving the laws of any jurisdiction other than the State of _____ and the Federal laws of the United States of America.

Very truly yours,

2-4

<u>EXHIBIT 3</u>

FORM OF SECURITY RELEASE CERTIFICATION

    I.    <u>Release of Security Interest</u>

_____, hereby relinquishes any and all right, title and interest it may have in and to the Mortgage Loans described in Exhibit A attached hereto upon purchase thereof by DB Structured Products, Inc. from the Seller named below pursuant to that certain Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of October 1, 2005, as of the date and time of receipt by _____ of $_____ for such Mortgage Loans (the "Date and Time of Sale"), and certifies that all notes, mortgages, assignments and other documents in its possession relating to such Mortgage Loans have been delivered and released to the Seller named below or its designees as of the Date and Time of Sale.

Name and Address of Financial Institution

_____
    (Name)

_____
    (Address)

By:_____

3-1

II.    <u>Certification of Release</u>

The Seller named below hereby certifies to DB Structured Products, Inc. that, as of the Date and Time of Sale of the above mentioned Mortgage Loans to DB Structured Products, Inc., the security interests in the Mortgage Loans released by the above named corporation comprise all security interests relating to or affecting any and all such Mortgage Loans. The Seller named below warrants that, as of such time, there are and will be no other security interests affecting any or all of such Mortgage Loans.

> [INNOVATIVE    MORTGAGE    CAPITAL,    LLC]
> [MORTGAGE LOAN SPECIALISTS, INC.]
> Seller
>
>
> By:_____
> Name:_____
> Title:_____

3-2

<u>EXHIBIT 4</u>

ASSIGNMENT AND CONVEYANCE

On this _____ day of _____, 200_, Innovative Mortgage Capital, LLC (the "Interim Servicer") and Mortgage Loan Specialists, Inc. (together with the Interim Servicer, the "Sellers"), a Sellers under that certain Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of October 1, 2005 (the "Agreement"), does hereby sell, transfer, assign, set over and convey to DB Structured Products, Inc. as Purchaser under the Agreement, without recourse, but subject to the terms of the Agreement, all rights, title and interest of the Sellers in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto as Schedule One, together with the related Mortgage Files and all rights and obligations arising under the documents contained therein. Pursuant to Subsection 6.03 of the Agreement, the Sellers have delivered or shall deliver to the Custodian the Mortgage Loan Documents for each Mortgage Loan to be purchased and such other documents as set forth in the Agreement. The contents of each related Servicing File required to be retained by the Interim Servicer to service the Mortgage Loans pursuant to the Agreement and thus not delivered to the Purchaser are and shall be held in trust by the Interim Servicer for the benefit of the Purchaser as the owner thereof. The Interim Servicer's possession of any portion of each such Servicing File is at the will of the Purchaser for the sole purpose of facilitating servicing of the related Mortgage Loan pursuant to the Agreement, and such retention and possession by the Interim Servicer shall be in a custodial capacity only. The ownership of each Mortgage Note, Mortgage, and the contents of the Mortgage File and Servicing File is vested in the Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Interim Servicer shall immediately vest in the Purchaser and shall be retained and maintained, in trust, by the Interim Servicer at the will of the Purchaser in such custodial capacity only.

The Sellers confirm to the Purchaser that the representations and warranties set forth in Subsections 7.01 and 7.02 of the Agreement and in the Commitment Letter, dated _____ __, 200_, are true and correct as of the date hereof, and that all statements made in each Seller's Officer's Certificate and all attachments thereto remain complete, true and correct in all respects as of the date hereof.

[The Sellers further represent and warrant to the Purchaser that the Option ARM Mortgage Loans listed on the Mortgage Loan Schedule attached hereto as Schedule One were originated pursuant to the Underwriting Guidelines of _____ which were effective as of _____, 200_.]

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

[SIGNATURE PAGE FOLLOWS]

4-1

INNOVATIVE MORTGAGE CAPITAL, LLC
(Seller and Interim Servicer)

By:_____
Name:_____
Title:_____


MORTGAGE LOAN SPECIALISTS, INC.
(Seller)

By:_____
Name:_____
Title:_____

4-2

## EXHIBIT 5

### CONTENTS OF EACH MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, which shall be available for inspection by the Purchaser and which shall be retained by the Seller or delivered to the Custodian:

1.  Mortgage Loan Documents.

2.  Residential loan application.

3.  Mortgage Loan closing statement.

4.  Verification of employment and income, if required pursuant to the related Mortgage Loan's origination program.

5.  Verification of acceptable evidence of source and amount of downpayment, if required pursuant to the related Mortgage Loan's origination program.

6.  Credit report on Mortgagor.

7.  Residential appraisal report.

8.  Photograph of the Mortgaged Property.

9.  Survey of the Mortgaged Property.

10. Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, sewer agreements, home association declarations, etc.

11. All required disclosure statements and statement of Mortgagor confirming receipt thereof.

12. If available, termite report, structural engineer's report, water potability and septic certification.

13. Sales Contract, if applicable.

14. Hazard insurance policy.

[TPW: NYLEGAL:385167.4] 17988-00374  10/17/2005 06:46 PM

15. Tax receipts, insurance premium receipts, ledger sheets, payment history from date of origination, insurance claim files, correspondence, current and historical computerized data files, and all other processing, underwriting and closing papers and records which are customarily contained in a mortgage loan file and which are required to document the Mortgage Loan or to service the Mortgage Loan.

16. Amortization schedule, if available.

17. Payment history for Mortgage Loans that have been closed for more than 90 days.

[TPW: NYLEGAL:385167.4] 17988-00374  10/17/2005 06:46 PM

## EXHIBIT 6

FORM OF CUSTODIAL ACCOUNT LETTER AGREEMENT

_____ __, 200__

To:     _____
        _____
        _____
        (the "Depository")

        As Interim Servicer under the Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of October 1, 2005, we hereby authorize and request you to establish an account, as a Custodial Account, to be designated as "Innovative Mortgage Capital, LLC in trust for DB Structured Products, Inc." All deposits in the account shall be subject to withdrawal therefrom by order signed by such Seller. You may refuse any deposit which would result in violation of the requirement that the account be fully insured as described below. This letter is submitted to you in duplicate. Please execute and return one original to us.

        INNOVATIVE MORTGAGE CAPITAL, LLC
(Interim Servicer)

By:_____

Name:_____

Title:_____

Date:_____

6-1

The undersigned, as Depository, hereby certifies that the above-described account ~~has been established under Account Number _____ at the office of the Depository~~ indicated above, and agrees to honor withdrawals on such account as provided above. The full amount deposited at any time in the account will be insured by the Federal Deposit Insurance Corporation through the Bank Insurance Fund ("BIF") or the Savings Association Insurance Fund ("SAIF").

_____

Depository

By:_____

Name:_____

Title:_____

Date:_____

6-2

[TPW: NYLEGAL:385167.4] 17988-00374  10/17/2005 06:46 PM

<u>EXHIBIT 7</u>

FORM OF ESCROW ACCOUNT LETTER AGREEMENT

_____ __, 200__

To:    _____

_____

_____

(the "Depository")

       As Interim Servicer under the Master Mortgage Loan Purchase and Interim Servicing Agreement, dated as of October 1, 2005, we hereby authorize and request you to establish an account, as an Escrow Account, to be designated as "Innovative Mortgage Capital, LLC in trust for DB Structured Products, Inc. and various Mortgagors, Fixed and Adjustable Rate Mortgage Loans." All deposits in the account shall be subject to withdrawal therefrom by order signed by the Interim Servicer. You may refuse any deposit which would result in violation of the requirement that the account be fully insured as described below. This letter is submitted to you in duplicate. Please execute and return one original to us.

                 INNOVATIVE MORTGAGE CAPITAL, LLC
                 (Seller and Interim Servicer)

                 By:_____

                 Name:_____

                 Title:_____

                 Date:_____

7-1

The undersigned, as Depository, hereby certifies that the above-described account has been established under Account Number _____ at the office of the Depository indicated above, and agrees to honor withdrawals on such account as provided above. The full amount deposited at any time in the account will be insured by the Federal Deposit Insurance Corporation through the Bank Insurance Fund ("BIF") or the Savings Association Insurance Fund ("SAIF").

_____
Depository

By:_____

Name:_____

Title:_____

Date:_____

7-2

[TPW: NYLEGAL:385167.4] 17988-00374  10/17/2005 06:46 PM

EXHIBIT 8

SERVICING ADDENDUM

Subsection 11.01      Innovative to Act as Servicer.

The Interim Servicer, as independent contract servicer, shall service and administer the Mortgage Loans that the Sellers sell to the Purchaser hereunder in accordance with all applicable laws, rules and regulations, the terms of the Mortgage Note and Mortgage, the FNMA and FHLMC servicing guides and this Agreement during the Interim Servicing Period and shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which the Interim Servicer may deem necessary or desirable and consistent with the terms of this Agreement.

Consistent with the terms of this Agreement, the Interim Servicer may waive, modify or vary any term of any Mortgage Loan or consent to the postponement of strict compliance with any such term or in any manner grant indulgence to any Mortgagor if in the Interim Servicer's reasonable and prudent determination such waiver, modification, postponement or indulgence is not materially adverse to the Purchaser; provided, however, that the Interim Servicer shall not permit any modification with respect to any Mortgage Loan that would change the Mortgage Interest Rate, defer or forgive the payment thereof or of any principal or interest payments, reduce the outstanding principal amount (except for actual payments of principal), make additional advances of additional principal or extend the final maturity date on such Mortgage Loan. Without limiting the generality of the foregoing, the Interim Servicer shall continue, and is hereby authorized and empowered, to execute and deliver on behalf of itself, and the Purchaser, all instruments of satisfaction or cancellation, or of partial or full release, discharge and all other comparable instruments, with respect to the Mortgage Loans and with respect to the Mortgaged Property. If reasonably required by the Interim Servicer, the Purchaser shall furnish the Interim Servicer with any powers of attorney and other documents necessary or appropriate to enable the Interim Servicer to carry out its servicing and administrative duties under this Agreement.

Notwithstanding anything in this Agreement to the contrary, in the event of a Principal Prepayment in full or in part of a Mortgage Loan, the Interim Servicer may not waive any Prepayment Charge or portion thereof required by the terms of the related Mortgage Note unless (i) the Interim Servicer determines that such waiver would maximize recovery of Liquidation Proceeds for such Mortgage Loan, taking into account the value of such Prepayment Charge and the Mortgage Loan, and the waiver of such Prepayment Charge is standard and customary in servicing similar Mortgage Loans (including the waiver of a Prepayment Charge in connection with a refinancing of the Mortgage Loan related to a default or a reasonably foreseeable default) or (ii) (A) the enforceability thereof is limited (1) by bankruptcy, insolvency, moratorium, receivership, or other similar law relating to creditors' rights or (2) due to acceleration in connection with a foreclosure or other involuntary payment, or (B) the enforceability is otherwise limited or prohibited by subsequent changes in applicable law. In no event shall the

8-1

Interim Servicer waive a Prepayment Charge in connection with a refinancing of a Mortgage Loan that is not related to a default or a reasonably foreseeable default. If the Interim Servicer waives or does not collect all or a portion of a Prepayment Charge relating to a Principal Prepayment in full or in part due to any action or omission of the Interim Servicer, other than as provided above, the Interim Servicer shall deposit the amount of such Prepayment Charge (or such portion thereof as had been waived for deposit) into the Custodial Account at the time of such prepayment for distribution in accordance with the terms of this Agreement.

In servicing and administering the Mortgage Loans, the Interim Servicer shall employ procedures including collection procedures and exercise the same care that it customarily employs and exercises in servicing and administering mortgage loans for its own account giving due consideration to accepted mortgage servicing practices of prudent lending institutions and the Purchaser's reliance on the Interim Servicer.

Subsection 11.02    Sub-Servicing Agreements Between the Interim Servicer and Sub-Servicers.

The Interim Servicer, as servicer, may arrange for the subservicing of any Mortgage Loan by a Sub-Servicer pursuant to a Sub-Servicing Agreement; provided that such sub-servicing arrangement and the terms of the related Sub-Servicing Agreement must provide for the servicing of such Mortgage Loans in a manner consistent with the servicing arrangements contemplated hereunder. Each Sub-Servicer shall be (i) authorized to transact business in the state or states where the related Mortgaged Properties it is to service are situated, if and to the extent required by applicable law to enable the Sub-Servicer to perform its obligations hereunder and under the Sub-Servicing Agreement and (ii) a FHLMC or FNMA approved mortgage servicer. Notwithstanding the provisions of any Sub-Servicing Agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Interim Servicer or a Sub-Servicer or reference to actions taken through the Interim Servicer or otherwise, the Interim Servicer shall remain obligated and liable to the Purchaser and its successors and assigns for the servicing and administration of the Mortgage Loans in accordance with the provisions of this Agreement without diminution of such obligation or liability by virtue of such Sub-Servicing Agreements or arrangements or by virtue of indemnification from the Sub-Servicer and to the same extent and under the same terms and conditions as if the Interim Servicer alone were servicing and administering the Mortgage Loans. Every Sub-Servicing Agreement entered into by the Interim Servicer shall contain a provision giving the successor servicer the option to terminate such agreement in the event a successor servicer is appointed. All actions of each Sub-Servicer performed pursuant to the related Sub-Servicing Agreement shall be performed as an agent of the Interim Servicer with the same force and effect as if performed directly by the Interim Servicer.

For purposes of this Agreement, the Interim Servicer shall be deemed to have received any collections, recoveries or payments with respect to the Mortgage Loans that are received by a Sub-Servicer regardless of whether such payments are remitted by the Sub-Servicer to the Interim Servicer.

8-2

Subsection 11.03    <u>Successor Sub-Servicers.</u>

Any Sub-Servicing Agreement shall provide that the Interim Servicer shall be entitled to terminate any Sub-Servicing Agreement and to either itself directly service the related Mortgage Loans or enter into a Sub-Servicing Agreement with a successor Sub-Servicer which qualifies under Subsection 11.05. Any Sub-Servicing Agreement shall include the provision that such agreement may be immediately terminated by any successor to the Interim Servicer without fee, in accordance with the terms of this Agreement, in the event that the Interim Servicer (or any successor to the Interim Servicer) shall, for any reason, no longer be the servicer of the related Mortgage Loans (including termination due to an Event of Default).

Subsection 11.04    <u>No Contractual Relationship Between Sub-Servicer and Purchaser.</u>

Any Sub-Servicing Agreement and any other transactions or services relating to the Mortgage Loans involving a Sub-Servicer shall be deemed to be between the Sub-Servicer and the Interim Servicer alone and the Purchaser shall not be deemed a party thereto and shall have no claims, rights, obligations, duties or liabilities with respect to any Sub-Servicer except as set forth in Subsection 11.09.

Subsection 11.05    <u>Assumption or Termination of Sub-Servicing Agreement by Successor Servicer.</u>

In connection with the assumption of the responsibilities, duties and liabilities and of the authority, power and rights of the Interim Servicer hereunder by a successor servicer pursuant to Section 16 of this Agreement, it is understood and agreed that the Interim Servicer's rights and obligations under any Sub-Servicing Agreement then in force between the Interim Servicer and a Sub-Servicer shall be assumed simultaneously by such successor servicer without act or deed on the part of such successor servicer; provided, however, that any successor servicer may terminate the Sub-Servicer.

The Interim Servicer shall, upon the reasonable request of the Purchaser, but at its own expense, deliver to the assuming party documents and records relating to each Sub-Servicing Agreement and an accounting of amounts collected and held by it and otherwise use its best efforts to effect the orderly and efficient transfer of the Sub-Servicing Agreements to the assuming party.

The Servicing Fee payable to any such successor servicer shall be payable from payments received on the Mortgage Loans in the amount and in the manner set forth in this Agreement.

Subsection 11.06    <u>Collection of Mortgage Loan Payments.</u>

Continuously from the related Closing Date until the expiration of the Interim Servicing Period, the Interim Servicer shall proceed diligently to collect all payments due under each Mortgage Loan when the same shall become due and payable and shall, to the extent such

8-3

procedures shall be consistent with this Agreement and the terms and provisions of any related Primary Insurance Policy or LPMI Policy, follow such collection procedures as it follows with respect to mortgage loans comparable to the Mortgage Loans and held for its own account. Further, the Interim Servicer shall take special care in ascertaining and estimating annual ground rents, taxes, assessments, water rates, fire and hazard insurance premiums, mortgage insurance premiums, and all other charges that, as provided in the Mortgage, will become due and payable to the end that the installments payable by the Mortgagors will be sufficient to pay such charges as and when they become due and payable.

Subsection 11.07    Realization Upon Defaulted Mortgage Loans.

(a)    The Interim Servicer shall use its best efforts, consistent with the procedures that the Interim Servicer would use in servicing loans for its own account, to foreclose upon or otherwise comparably convert the ownership of such Mortgaged Properties as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments pursuant to Subsection 11.01. The Interim Servicer shall use its best efforts to realize upon defaulted Mortgage Loans in such a manner as will maximize the receipt of principal and interest by the Purchaser, taking into account, among other things, the timing of foreclosure proceedings. The foregoing is subject to the provisions that, in any case in which Mortgaged Property shall have suffered damage, the Interim Servicer shall not be required to expend its own funds toward the restoration of such property in excess of $2,000 unless it shall determine in its discretion (i) that such restoration will increase the proceeds of liquidation of the related Mortgage Loan to Purchaser after reimbursement to itself for such expenses, and (ii) that such expenses will be recoverable by the Interim Servicer through Insurance Proceeds or Liquidation Proceeds from the related Mortgaged Property, as contemplated in Subsection 11.09. In the event that any payment due under any Mortgage Loan is not paid when the same becomes due and payable, or in the event the Mortgagor fails to perform any other covenant or obligation under the Mortgage Loan and such failure continues beyond any applicable grace period, the Interim Servicer shall take such action as it shall deem to be in the best interest of the Purchaser. In the event that any payment due under any Mortgage Loan remains delinquent for a period of 90 days or more, the Interim Servicer shall commence foreclosure proceedings, provided that prior to commencing foreclosure proceedings, the Interim Servicer shall notify the Purchaser in writing of the Interim Servicer's intention to do so, and the Interim Servicer shall not commence foreclosure proceedings if the Purchaser objects to such action within ten (10) Business Days of receiving such notice.  The Interim Servicer shall notify the Purchaser in writing of the commencement of foreclosure proceedings.  In such connection, the Interim Servicer shall be responsible for all costs and expenses incurred by it in any such proceedings; provided, however, that it shall be entitled to reimbursement thereof from the related Mortgaged Property, as contemplated in Subsection 11.09.

(b)    Notwithstanding the foregoing provisions of this Subsection 11.07, with respect to any Mortgage Loan as to which the Interim Servicer has received actual notice of, or has actual knowledge of, the presence of any toxic or hazardous substance on the related Mortgaged Property the Interim Servicer shall not either (i) obtain title to such Mortgaged Property as a

8-4

result of or in lieu of foreclosure or otherwise, or (ii) otherwise acquire possession of, or take any other action, with respect to, such Mortgaged Property if, as a result of any such action, the Purchaser would be considered to hold title to, to be a mortgagee-in-possession of, or to be an owner or operator of such Mortgaged Property within the meaning of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, or any comparable law, unless the Interim Servicer has also previously determined, based on its reasonable judgment and a prudent report prepared by a Person who regularly conducts environmental audits using customary industry standards, that:

(1)    such Mortgaged Property is in compliance with applicable environmental laws or, if not, that it would be in the best economic interest of the Purchaser to take such actions as are necessary to bring the Mortgaged Property into compliance therewith; and

(2)    there are no circumstances present at such Mortgaged Property relating to the use, management or disposal of any hazardous substances, hazardous materials, hazardous wastes, or petroleum-based materials for which investigation, testing, monitoring, containment, clean-up or remediation could be required under any federal, state or local law or regulation, or that if any such materials are present for which such action could be required, that it would be in the best economic interest of the Purchaser to take such actions with respect to the affected Mortgaged Property.

The cost of the environmental audit report contemplated by this Subsection 11.07 shall be advanced by the Interim Servicer, subject to the Interim Servicer's right to be reimbursed therefor from the Custodial Account as provided in Subsection 11.09(v).

If the Interim Servicer determines, as described above, that it is in the best economic interest of the Purchaser to take such actions as are necessary to bring any such Mortgaged Property into compliance with applicable environmental laws, or to take such action with respect to the containment, clean-up or remediation of hazardous substances, hazardous materials, hazardous wastes, or petroleum-based materials affecting any such Mortgaged Property, then the Interim Servicer shall take such action as it deems to be in the best economic interest of the Purchaser. The cost of any such compliance, containment, cleanup or remediation shall be advanced by the Interim Servicer, subject to the Interim Servicer's right to be reimbursed therefor from the Custodial Account as provided in Subsection 11.09(v).

(c)    Proceeds received in connection with any Final Recovery Determination, as well as any recovery resulting from a partial collection of Insurance Proceeds or Liquidation Proceeds in respect of any Mortgage Loan, will be applied in the following order of priority: first, to reimburse the Interim Servicer for any related unreimbursed Servicing Advances, pursuant to Subsections 11.09(ii) and (v); second, to accrued and unpaid interest on the Mortgage Loan, to the date of the Final Recovery Determination, or to the Due Date prior to the Distribution Date on which such amounts are to be distributed if not in connection with a Final Recovery

8-5

Determination; and third, as a recovery of principal of the Mortgage Loan. If the amount of the recovery so allocated to interest is less than the full amount of accrued and unpaid interest due on such Mortgage Loan, the amount of such recovery will be allocated by the Interim Servicer as follows: first, to unpaid Servicing Fees; and second, to the balance of the interest then due and owing. The portion of the recovery so allocated to unpaid Servicing Fees shall be reimbursed to the Interim Servicer pursuant to Subsection 11.09(iii).

Subsection 11.08    Establishment of Custodial Accounts; Deposits in Custodial Accounts.

The Interim Servicer shall segregate and hold all funds collected and received pursuant to each Mortgage Loan separate and apart from any of its own funds and general assets and shall establish and maintain one or more Custodial Accounts, in the form of time deposit or demand accounts. The creation of any Custodial Account shall be evidenced by a Custodial Account Letter Agreement in the form of Exhibit 6.

The Interim Servicer shall deposit in the related Custodial Account on a daily basis, and retain therein the following payments and collections received by it subsequent to the Cut-off Date, or received by it prior to the Cut-off Date but allocable to a period subsequent thereto, other than in respect of principal and interest on the Mortgage Loans due on or before the Cut-off Date:

(i)    all payments on account of principal on the Mortgage Loans;

(ii)    all payments on account of interest on the Mortgage Loans, including all Prepayment Charges;

(iii)    all Liquidation Proceeds;

(iv)    all Insurance Proceeds including amounts required to be deposited pursuant to Subsections 11.14 and 11.15, other than proceeds to be held in the Escrow Account and applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with the Interim Servicer's normal servicing procedures, the loan documents or applicable law;

(v)    all Condemnation Proceeds affecting any Mortgaged Property which are not released to the Mortgagor in accordance with the Interim Servicer's normal servicing procedures, the loan documents or applicable law;

(vi)    all proceeds of any Mortgage Loan repurchased in accordance with Subsections 7.03 and 7.04 and all amounts required to be deposited by the Interim Servicer in connection with shortfalls in principal amount of Qualified Substitute Mortgage Loans pursuant to Subsection 7.03;

8-6